**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 11 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ARMANDO C. VERA,

          Plaintiff - Appellant,

v.

UTAH DEPARTMENT OF HUMAN
SERVICES; YOUTH CORRECTIONS
DIVISION, Utah Department of
Human Services; WEBER VALLEY
DETENTION (Moweda); and
MILLCREEK YOUTH CENTER,

          Defendants - Appellees.

No. 02-4112
(D.C. No. 1:97-CV-73-J)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **McKAY**, and **McCONNELL**, Circuit Judges.

After examining the briefs and the appellate record, this panel has

determined unanimously that oral argument would not materially assist the

determination of this appeal.  See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).

The case is therefore ordered submitted without oral argument.

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

This is a *pro se* appeal of an action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e - 2000e-17. Appellant brought this action against his employer, Utah Department of Human Services, Division of Youth Services, alleging a hostile work environment and employment discrimination based on his race, color, national origin, and age. The complaint named the Department, the Division, and two of its facilities (Weber Valley Detention and Millcreek Youth Center) as defendants (collectively referred to as the "State" or "Appellees"). Reading Appellant's brief liberally, he appeals the entry of summary judgment in favor of the State, the denial of his motion for appointment of counsel, and the denial of his motion for recusal of the district court judge.

We address appointment of counsel and recusal first, since those issues could potentially affect the appropriateness of the district court's grant of summary judgment. We review a decision refusing the appointment of counsel in a Title VII action for an abuse of discretion. Castner v. Colorado Springs Cablevision, 979 F.2d 1417, 1422-23 (10th Cir. 1992). We review a denial of a motion to recuse for abuse of discretion. Willner v. Univ. of Kansas, 848 F.2d 1023, 1026 (10th Cir. 1988).

Appellant, Mr. Vera, who is Hispanic, claims to have been repeatedly subjected to racial insults and ridicule, deprived of supervisory responsibilities, denied overtime pay, made to take a racially discriminatory examination in order

to keep his job, and given dangerous work assignments because of his race. The district court initially granted summary judgment in favor of the State on March 24, 1999, and denied Mr. Vera's repeated requests for appointment of counsel on the ground that he had not filed an application to proceed *in forma pauperis* under 28 U.S.C. § 1915 or made any showing that he was indigent.

On appeal, this court reversed the grant of summary judgment on the ground that the district court had applied the wrong standard in determining whether to appoint counsel to represent Mr. Vera. This court explained that Title VII provides for the discretionary appointment of counsel and that "a litigant need not be destitute to qualify for appointed counsel." Vera v. Utah Dep't of Human Servs., 203 F.3d 836, 2000 WL 130717, at **1-2 (10th Cir. Feb. 4, 2000) (unpublished) (quoting Castner, 979 F.2d at 1421-22). Instead, we explained, the district court should consider the four factors identified in Castner to determine whether appointment of counsel is appropriate. Those factors include (1) plaintiff's financial inability to afford counsel; (2) plaintiff's diligence in attempting to secure counsel; (3) the merits of the allegations of discrimination; and (4) only in close cases as an aid in exercising judicial discretion, the "plaintiff's capacity to present the case without counsel." Castner, 979 F.2d at 1421. We remanded the case for further proceedings in the district court.

On remand, the district court appointed counsel to represent Mr. Vera for

the limited purpose of filing a renewed motion for appointment of counsel. Upon consideration of this renewed motion, the district court again denied appointment of counsel and issued a formal order discussing the four Castner factors at great length.

With respect to the first factor, the district court examined financial information provided by Mr. Vera and concluded that he had some money available to pay counsel but would not be able to afford sustained and significant litigation. As to the second factor, the district court found that Mr. Vera had made substantial efforts to obtain counsel, and this factor weighed in favor of the appointment of counsel.

With respect to the third factor, the district court explained that "[w]hile Mr. Vera's financial condition lends some support to his request for appointment of counsel, the merits of his existing claims weigh heavily against the appointment of counsel in this case." Rec., Vol. V, Doc. 190, at 14. As the court explained, many of Mr. Vera's claims failed because they were either time-barred, legally insufficient, or because they were never presented to the EEOC or the corresponding state agency as required by Title VII.

The district court was careful to note that in certain situations a litigant's claim might appear to lack merit only because the party is acting *pro se*. Nevertheless, the district court appears to have taken great care in evaluating the

merits of the claims and took special efforts to ensure that Mr. Vera was represented by counsel in filing his renewed request for appointment of counsel. The district court, in its December 14, 2001, Order, then examined each of Mr. Vera's claims and each instance of alleged discrimination and determined that none of the claims had merit.

As the district court recognized, "if . . . the plaintiff appears to have some chance of prevailing, then appointment should not be refused for want of a meritorious claim." Poindexter v. FBI, 737 F.2d 1173, 1187 (D.C. Cir. 1984) (footnote omitted). Nevertheless, the district court examined each allegation, applied the appropriate law, and gave a detailed explanation of the reasons that each claim lacked merit.[1] Therefore, the district court concluded that this third factor weighed heavily against appointment of counsel.

With respect to the fourth factor, the district court explained that the issues in the case were sufficiently complex to assume that Mr. Vera might have benefitted from the assistance of counsel and that this factor also weighed in favor of appointing counsel. Nevertheless, the court also recognized that Mr. Vera had conducted his case in a diligent and organized manner and was able to articulate his claims and views.

---

[1]A more detailed discussion of the merits of Appellant's claims is found below in the discussion of summary judgment.

After examining each of these factors, the district court concluded that, despite Mr. Vera's financial condition, without a colorable claim for relief, the balance of factors weighed against the appointment of counsel. After a thorough review of the record, the briefs, and the district court's December 14, 2001, Order, and giving due consideration to Mr. Vera's *pro se* status, we cannot conclude that the district court abused its discretion in denying Mr. Vera appointment of counsel.

With respect to the motion for recusal, Mr. Vera makes several serious allegations regarding the district court's conduct in handling his case. He alleges that the court did not take the time to understand the issues and facts, does not like Hispanics, does not believe *pro se* litigants have a right to be in court, refused to compel Appellee to respond to discovery, refused to hold a pretrial meeting, and ignored Appellant's Amended Complaint. See Plaintiff's Motion Request for Recusal of Judge Bruce Jenkins From This Case, Rec., Vol. V, Doc. 161, at *1-*2.

In order to obtain disqualification of a judge, a litigant "must show that a reasonable person, knowing all the circumstances, would harbor doubts about the judge's impartiality, . . . and rumor, speculations, opinions and the like do not suffice." Green v. Branson, 108 F.3d 1296, 1305 (10th Cir. 1997) (internal citations omitted). We have repeatedly held that judges need not recuse

themselves if the allegations are based solely on their adversarial rulings. Christensen v. Ward, 916 F.2d 1462, 1466 (10th Cir. 1990); Willner v. Univ. of Kansas, 848 F.2d at 1028. After reviewing the briefs and the record, we cannot conclude that a reasonable person, knowing all the circumstances of the case, would harbor any doubts about Judge Jenkins' impartiality. Therefore, we cannot conclude that the district court abused its discretion in denying Appellant's motion for recusal.

Finally, we turn to the grant of summary judgment in favor of the State. We review a grant of summary judgment *de novo*, applying the same standard used by the district court, examining the facts in the light most favorable to the party opposing summary judgment. Belhomme v. Widnall, 127 F.3d 1214, 1216 (10th Cir. 1997). Furthermore, when the plaintiff proceeds *pro se*, we construe his pleadings liberally. Id.; Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996).

While Mr. Vera's brief does not explicitly challenge the grant of summary judgment, Mr. Vera appears to allege certain outstanding factual issues that would preclude summary judgment. The first of those issues is the lack of appointed counsel to aid Mr. Vera in the preparation of his case. This issue we addressed sufficiently above. Additionally, Mr. Vera claims that factual issues remain with respect to his allegations of employment and age discrimination and hostile work

environment. As the district court found in its initial grant of summary judgment and again on remand, many of Appellant's claims are time-barred, and the rest are unsupported by the evidence.

On December 17, 2001, the State filed a Motion to Enter Final Judgment, seeking summary judgment on all of Appellant's claims. Mr. Vera failed to respond to the merits of the motion despite repeated continuances and even specific requests from the court. Instead, Mr. Vera responded by renewing allegations of bias by the court and the unfairness of not appointing counsel on his behalf. Finally, in its Order of May 31, 2002, the district court granted the State's Motion for Entry of Final Judgment, granting summary judgment on all of Mr. Vera's claims.

The court examined each of Mr. Vera's claims and the evidence he produced to support them. As the district court explained, it is not enough for Appellant to allege that he was the victim of prejudice. He must show that he has complied with the procedures outlined by Congress for suits under Title VII, including the requirement that the unlawful discrimination charge be brought before the Equal Employment Opportunity Commission ("EEOC") through its authorized surrogate in Utah, the Utah Anti-Discrimination Division ("UADD").

A Title VII plaintiff is required to file a discrimination charge within 300 days of the alleged discriminatory act. See 42 U.S.C. § 2000e-5(e)(1); Boyer v.

Cordant Techs., Inc., 316 F.3d 1137, 1138 (10th Cir. 2003). Mr. Vera filed his claim with the UADD on January 2, 1991, which was deemed to be filed with the EEOC on March 3, 1991. Therefore, any allegedly discriminatory act must have occurred between May 6, 1990, and March 3, 1991, in order for the claim to be timely.

Mr. Vera's claims are essentially as follows: (1) he was demoted from his position as Senior Intake Officer at the Weber Valley facility on or about February 3, 1990 based on his race, national origin, and age; (2) he was denied promotions because of his early failures to pass the Youth Corrections Counselor Series Test and was denied a raise once he passed the test in September 1990; (3) he was harassed and ridiculed at the Weber Valley facility because of his national origin; and (4) he was given undesirable shift assignments while working at the Weber Valley facility because of his race or national origin.

With respect to the claim of harassment, the UADD found that the claim was timely raised and issued a cease and desist order compelling the State to end the harassment. With respect to the allegation of demotion, the UADD found that the claim was untimely. Finally, with respect to the remaining claims, the UADD found that Appellant had failed to establish a prima facie case of discrimination.

Despite these findings by the UADD, the district court undertook an independent analysis of each claim and the evidence supporting them. With

respect to the demotion claim, the court agreed with the UADD that the claim was untimely. Even viewing the facts in the light most favorable to Appellant, any demotion that occurred happened no later than February 1990, and, therefore, prior to May 6, 1990. Furthermore, Appellant's claim that he was subjected to age discrimination is without merit. Appellant has pled no facts showing that he was discriminated against because of his age. Additionally, the Age Discrimination in Employment Act, 28 U.S.C. § 631(a) (1999), explicitly states that prohibitions against age discrimination are "limited to individuals who are at least 40 years of age." Mr. Vera was not 40 years old at the time of the alleged age discrimination. Rec., Vol. III, Doc. 54, ex. C at 74.

The district court also held that Appellant's claims regarding the required examination and failure to promote or give a raise were without merit. Since the failed exams were taken prior to May 1990, any allegation based on those exams is untimely. Furthermore, the allegation that Appellant was denied a raise for passing the exam in September 1990 is unsupported by the evidence. The evidence shows that others who passed the test were upgraded to a grade equal to Mr. Vera's and that they were given pay raises resulting in pay levels comparable to Mr. Vera's. The district court concluded that Mr. Vera had failed to produce any evidence from which a reasonable juror could conclude that the State was committed to pay raises for anyone passing the exam, or specifically for anyone of

Mr. Vera's grade who passed the exam.

With respect to the harassment claim, on which the UADD found in favor of Mr. Vera, the district court found no evidence from which a reasonable juror could find workplace harassment creating a "hostile environment" which would entitle him to compensatory damages. Specifically, the harassment referred to by Appellant in his original charge to the UADD occurred prior to November 21, 1991. Prior to that date compensatory damages were not available in Title VII cases, and Appellant has not proposed any remedy to which he would be entitled for that alleged harassment other than the cease and desist order already provided by the UADD. Appellant alleged other incidents of ridicule at the Mill Creek facility which occurred after November 21, 1991, but none of those incidents involved derogatory references to his national origin or race. Therefore, no issue of fact remains with respect to this claim.

With respect to Appellant's claim that he was given undesirable shift assignments, Appellant has provided evidence that the shift assignments he received during the period from 1989 to 1990 were indeed arduous. He has, nevertheless, failed to produce any evidence that those assignments were discriminatory or that during the relevant time period following May 6, 1990, he suffered any disparate treatment based on race or national origin. For these reasons, the district court agreed with the UADD that the shift assignments did

not establish a prima facie case of discrimination.

In addition to the allegations discussed above, Mr. Vera raised other claims, including a claim that he was required to work in dangerous circumstances. However, these claims arose after the initial charge was brought before the UADD, and therefore Appellant has failed to exhaust his administrative remedies with respect to those claims by not bringing them before the UADD.

Following a thorough review of the record, the briefs, and the district court's orders, we conclude that for reasons substantially the same as those reached by the district court in its Orders dated December 14, 2001, and May 31, 2002, the district court did not err in denying Appellant's requests for the appointment of counsel and the recusal of Judge Jenkins, and in granting summary judgment in favor of Appellees.

**AFFIRMED**.

Entered for the Court

Monroe G. McKay
Circuit Judge